### NEUSS, HESSLEIN & CO. v. VAN DER STEGEN.

(Circuit Court of Appeals, Ninth Circuit. February 8, 1926. Rehearing Denied March 22, 1926.)

No. 4662.

1. Courts ⬅96(1)—Whether United States Court for China obtained jurisdiction of New York corporation determined by Supreme Court's rule.

Whether United States Court for China had jurisdiction of New York corporation, and whether person served was an agent on whom valid service could be made, *held* federal questions controlled by Supreme Court rule.

2. Appearance ⬅9(2)—Defendant's plea to jurisdiction held special and not general appearance, notwithstanding prayer.

Plea reciting that "defendant, appearing specially for the purpose of this plea, pleads to the jurisdiction of this court" on specified grounds, *held* special and not general appearance, notwithstanding prayer that "summons be quashed and the petition dismissed."

3. Ambassadors and consuls ⬅6—United States Court for China presumed without jurisdiction of cause, unless contrary affirmatively appears.

United States Court for China has no jurisdiction except that conferred by laws of United States, and is presumed to be without jurisdic-

tion of a cause, unless contrary affirmatively appears.

**4. Ambassadors and consuls ⬡⟿6—Burden of proving foreign corporation was doing business in China, and subject to jurisdiction of United States Court for China, held on plaintiff.**

Allegation in petition that defendant was New York corporation, having main office in New York, placed burden on plaintiff to allege and prove that defendant was doing business in Shanghai, and was subject to jurisdiction of United States Court for China.

**5. Ambassadors and consuls ⬡⟿6—Petition held insufficient to show New York corporation subject to jurisdiction of United States Court for China.**

Petition alleging that defendant New York corporation had main office in New York, by correspondence made contract with plaintiff through manager of branch office in Shanghai, on account of main office, *held* insufficient to show that defendant was doing business in Shanghai, so as to be subject to jurisdiction of United States Court for China.

**6. Ambassadors and consuls ⬡⟿6—That bank exchange credit was to be opened by corporate buyer in New York held sufficient to show that buyer was not doing business in China.**

That bank exchange credit was to be opened by buyer in New York *held* alone sufficient to show that buyer was not doing business in China, so as to be subject to jurisdiction of United States Court for China.

**7. Ambassadors and consuls ⬡⟿6—Service of summons on person not authorized to close contracts for foreign corporation held not to give court jurisdiction.**

Service of summons on person, authorized to solicit business in China for New York corporation, but not to close contracts without first communicating with and receiving authority from corporation, did not give United States Court for China jurisdiction of corporation.

In Error to the United States Court for China; Charles S. Lobingier, Judge.

Action by L. Van der Stegen, doing business under the firm name and style of the Belgian Trading Company, against Neuss, Hesslein & Co., a corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Garret W. McEnerney and Andrew F. Burke, both of San Francisco, Cal. (Davies & Bryan, of Shanghai, China, and Gustav Lange, Jr., of New York City, of counsel), for plaintiff in error.

Chickering & Gregory, Warren Gregory, and Blair S. Shuman, all of San Francisco, Cal., and Fessenden, Holcomb & Snyder, of Shanghai, China, for defendant in error.

Before HUNT, RUDKIN, and MORROW, Circuit Judges.

MORROW, Circuit Judge. Defendant in error brought action on June 19, 1920, in the United States District Court for China against plaintiff in error for an alleged breach of a contract. The parties will hereinafter be designated plaintiff and defendant, as in the court below.

During the period involved in this controversy, plaintiff, L. Van der Stegen, was a citizen of Belgium, doing business in Shanghai, China, under the name of the Belgian Trading Company, and defendant, Neuss, Hesslein & Co., was an American corporation, organized and existing under the laws of the state of New York, and having its principal place of business at Nos. 43–45 White street, New York City.

In plaintiff's petition, it is alleged that the defendant had a branch office at No. 1 Yuen Ming Yuen Road, Shanghai, China, of which W. P. Hough was the manager, and its main office in New York, United States of America; that on January 30, 1920, defendant, through the manager of its Shanghai branch, purchased of the plaintiff, for and on account of its (the defendant's) New York office, certain merchandise, the items of which material to this controversy are described as "100 tons spray hen's egg yolk, at gold $0.54 per pound net c. i. f. New York, shipment per S. S., April to June. Approximate value—U. S. gold $121,000. 75 tons hen's egg albumen, at gold $1.28 per pound net c. i. f. New York, shipment per S. S., April to July, 1920. Approximate value— U. S. gold $215,000."

It is alleged in the petition that of the 100 tons of spray hen's egg yolk and 75 tons of hen's egg albumen, purchased under date of January 30, 1920, 50 per cent. thereof was then in Shanghai, awaiting shipment to the defendant in New York, and the balance was arriving in Shanghai weekly in large quantities; that, notwithstanding the agreement entered into as per the correspondence had between the plaintiff and defendant, the defendant had failed to establish the necessary bank credit covering the purchase of 100 tons spray hen's egg yolk and 75 tons hen's egg albumen, and on May 27, 1920, the defendant's New York office cabled the plaintiff, informing it that said purchases of 100 tons spray hen's egg yolk and 75 tons hen's egg albumen would be rejected; that defendant's action in rejecting the orders constituted a breach of contract; that, by defendant's action in failing to carry out its agreement, plaintiff was threatened with a serious financial loss occasioned by the following: (a)

Defendant's failure to establish a bank credit as agreed upon; (b) defendant's refusal to receive the 100 tons spray hen's egg yolk and 75 tons hen's egg albumen, as ordered and as mentioned in the petition.

The plaintiff prayed for a judgment in its favor, declaring that the facts constituted a breach of contract by defendant in failing to immediately open a credit for the sum of United States gold $336,000, and an acceptance without delay of the 100 tons spray hen's egg yolk and 75 tons hen's egg albumen at the price agreed upon, namely, $336,000, that the cargo be sold in Shanghai for defendant's account, and that defendant be adjudged to pay whatever loss may be suffered by the plaintiff as between the contract and the selling price, together with charges, and for costs, and for such other equitable relief as to the court might seem just and meet. The summons issued upon this petition does not appear in the record.

On July 12, 1920, the defendant, Neuss, Hesslein & Co., Inc., appeared specially by counsel for the purpose of pleading to the jurisdiction of the court on the grounds:

(1) That the defendant was a corporation organized and existing under the laws of the state of New York, United States of America; that it maintained an office in the City of New York, in said state of New York, and was subject to the jurisdiction of the courts of said state.

(2) That the said defendant had not then, nor did it have at any time mentioned in the plaintiff's petition, within the jurisdiction of the court, an agent or attorney authorized to accept service of process; that the defendant was not then, nor had it been at any time mentioned in said petition, registered at any American consulate in China, or in any office or with any official, whether American or Chinese, as an American corporation engaged in business in China or within the jurisdiction of the court; and that the defendant was not then, nor had it been at any time mentioned in the petition, or at all, engaged in business in China or within the jurisdiction of the court.

Defendant, by counsel, prayed that the summons be quashed, and that the petition be dismissed.

The appearance on behalf of defendant was made by a firm of attorneys in Shanghai, one of whom verified the petition, and alleged in his verification that they had been instructed by the defendant, Neuss, Hesslein & Co., Inc., to appear as their attorneys in the matter for the purpose of presenting the plea to the jurisdiction of the court.

On September 29, 1920, the court overruled defendant's plea to the jurisdiction, on the grounds that the delivery of the summons to the branch manager was a sufficient service upon a corporate defendant, especially where it has no other representative in the jurisdiction; further, that a prayer for dismissal in a plea to jurisdiction constituted a general appearance, notwithstanding a recital that defendant was appearing specially. To this order defendant excepted, and the order is assigned as error.

On September 24, 1920, plaintiff filed its amended petition, alleging, as in the original petition, that defendant maintained a branch office in the city of Shanghai, China, under the name of Neuss, Hesslein & Co., Inc., but for the first time it is alleged that defendant was engaged in business in Shanghai under its corporate name, and was maintaining a branch office in said city, and was carrying on business in said city under its corporate name.

It alleged that plaintiff, about the 31st day of January, 1920, entered into a contract with the defendant; the defendant purchasing and the plaintiff selling the merchandise mentioned in the original petition. The plaintiff alleged the breach of the contract on the part of defendant, substantially as charged in the original petition, but alleged that a memorandum of the contract had been made by the defendant and confirmed by the plaintiff. The memorandum referred to is attached to the petition and is evidenced by the copy of a letter dated January 31, 1920, addressed to the plaintiff, purporting to have been signed by "W. P. Hough, representing Neuss, Hesslein & Co," but unsigned in the record, and without any identification that the unsigned letter represented "Neuss, Hesslein & Co.," or was sent by their authority. This unsigned letter does, however, recite: "We confirm our conversation of yesterday with your good selves, and beg to state, as you are already aware, we have bought from you, as per our letter of January 16 and 28, respectively," certain merchandise, including, among other items, the merchandise mentioned in the petition. This unsigned letter as it appears in the record also recites that "we have closed with you yesterday for on account of our New York firm."

The answer of the plaintiff, without date, refers to a conversation and correspondence, with Neuss, Hesslein & Co., which concludes

with the statement: "It is understood that you shall have confirmed credit opened in our favor for the amount of goods purchased for 90 days' draft. We shall send you our contracts on Monday morning."

The contracts here referred to are not in the record, and do not appear to have ever been made. The amended petition claimed damages in the sum of $170,242.80.

To this amended petition defendant demurred on December 29, 1920, on the ground that the facts set forth did not constitute a cause of action.

On May 24, 1921, the court overruled defendant's demurrer to plaintiff's amended petition, to which order defendant excepted, and has assigned the same as error.

The defendant, on May 28, 1921, moved the court for an order directing the plaintiff to make its amended petition more definite, certain, and specific by supplying the following details, viz.: Whether the contract mentioned in the petition was an oral or a written one, and, if in writing, that a copy of the same be attached to the petition.

On June 1, 1921, the court overruled defendant's motion, on the ground that, where a party demurs to a pleading, he waives the right to a more specific statement. To this order the defendant's counsel excepted, and has assigned the order as error.

The defendant, on June 6, 1921, answered the amended petition, admitting that it was a corporation duly organized and existing under and by virtue of the laws of the state of New York, and that its salesmen, from time to time, had maintained an office in the city of Shanghai, China, for the purpose of displaying samples and receiving and forwarding mail and samples; but it denied each and every other allegation of paragraph 3 of said amended petition.

The denial of the other allegations of this paragraph was general, and in effect a denial that defendant maintained a branch office in the city of Shanghai, China, under the name of Neuss, Hesslein & Co., Inc., denied that at all the times mentioned in the petition defendant was engaged in business in Shanghai under the corporate name of Neuss, Hesslein & Company, Inc.; denied that defendant was then maintaining a branch office in the said city of Shanghai, and was carrying on business in Shanghai under its corporate name.

The defendant further alleged that W. P. Hough, upon whom service was made by the plaintiff, was never authorized in writing or otherwise to make the alleged contract, if any, mentioned and described in the amended petition, and the plaintiff well knew that said W. P. Hough was not authorized to act on behalf of defendant or bind the defendant to the said alleged contract, if any, mentioned and described in the petition. By stipulation of the parties to the action, the depositions of certain witnesses were thereupon taken on open commission and filed with the court. The evidence related to the facts involved in the question of the jurisdiction of the court over the defendant, and the character of the employment of W. P. Hough by the plaintiff in Shanghai.

Plaintiff, on November 28, 1922, filed a second amended petition, alleging subsequent correspondence relating to the alleged contract, and claiming damages in the sum of $225,810.08. To this second amended petition defendant demurred, on the ground that the petition did not state facts sufficient to constitute a cause of action. The court overruled the demurrer, and defendant excepted, and has assigned the order as error.

Defendant thereupon answered the second amended petition, and, among other defenses, again alleged, as in its answer to the first amended petition, that Hough was not authorized to make the alleged contract, denied that defendant was engaged in business in Shanghai, or was maintaining a branch office in Shanghai, and denied that the court had jurisdiction over the defendant.

Upon the trial of the case, the court, on January 12, 1924, entered a judgment in favor of the plaintiff for the sum of $171,239.-49, with costs and interest from July 21, 1920. Defendant brings error.

The first and important question to be determined is therefore whether the United States Court for China had jurisdiction of the defendant, and whether Hough, upon whom service of summons appears to have been made, was an agent of the defendant upon whom a valid service could be made, and whether the jurisdiction of the court was thus established.

The first question is jurisdictional, and not procedural. The second question is procedural and jurisdictional. Cannon Mfg. Co. v. Cudahy Co., 267 U. S. 333, 335, 45 S. Ct. 250, 69 L. Ed. 634.

[1] In the present case both are federal questions, and the rule of the Supreme Court is controlling. Chipman, Limited, v. Jeffrey Co., 251 U. S. 373, 379, 40 S. Ct. 172, 64 L. Ed. 314; Pembleton v. Ill. Com'l Men's Ass'n, 289 Ill. 99, 124 N. E. 355.

[2] Whether the prayer of the defendant in

the plea to the jurisdiction that the "summons be quashed and the petition dismissed" was a general appearance or a special appearance to test the question of jurisdiction alone is answered by the plea itself, setting forth that "defendant, appearing specially for the purpose of this plea, pleads to the jurisdiction of this court on the following grounds."

This challenge to the jurisdiction the defendant maintained in all the subsequent pleadings and proceedings, and we find numerous cases in which this procedure has passed through the Supreme Court without question.

Dealing with the question of jurisdiction directly, we find the law well established by the Supreme Court. In Phila. & Reading Ry. Co. v. McKibbin, 243 U. S. 264, 265, 37 S. Ct. 280, 61 L. Ed. 710, that court said:

"A foreign corporation is amenable to process to enforce a personal liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there."

The strictness of this rule has been declared by the Supreme Court in numerous cases.

In Thomas v. Board of Trustees of the Ohio State University, 195 U. S. 207, 210, 25 S. Ct. 24, 25, 49 L. Ed. 160, the Supreme Court had before it the question of jurisdiction of the Circuit Court. The defendant did not object to the jurisdiction in the Circuit Court, but in the Circuit Court of Appeals a codefendant raised the question. The Supreme Court, considering the question, declared that certain propositions upon that subject are so affirmatively established that further discussion of them would be both useless and inappropriate. The court said:

"The jurisdiction of a Circuit Court of the United States is limited in the sense that it has no jurisdiction except that conferred by the Constitution and laws of the United States; that a cause is presumed to be without its jurisdiction unless the contrary affirmatively appears; that such jurisdiction, or the facts upon which in legal intendment it rests, must be distinctly and positively averred in the pleadings or should appear affirmatively and with equal distinctness in other parts of the record; it not being sufficient that jurisdiction may be inferred argumentatively."

[3, 4] This limitation of jurisdiction is peculiarly applicable to the United States Court in China. It has no jurisdiction except that conferred by the laws of United States, and a cause is presumed to be without its jurisdiction unless the contrary affirmatively appears. The allegation in the petition that the defendant was a New York corporation, with its main office in New York, placed the burden of proof upon the plaintiff to allege and prove that defendant was doing business in Shanghai, China, and was subject to the jurisdiction of the United States Court at Shanghai. There was no presumption in favor of jurisdiction, and, unless it was clearly and distinctly established, the plea of defendant to the jurisdiction of the court should have been sustained, and the case dismissed.

In the case of the Bank of America v. Whitney Cent. Nat. Bank, 261 U. S. 171, 173, 43 S. Ct. 311, 312, 67 L. Ed. 594, the plaintiff in error was a New York corporation, and the defendant in error was a banking house with its usual place of business in New Orleans, La. Service of process was made by delivering a summons to its president while he was temporarily in New York. The defendant in error had a large New York business, which was transacted for it by its correspondents in New York. The Supreme Court held that "they, not the" defendant in error, "were doing business in New York. In this respect," said the court, "their relationship is comparable to that of a factor acting for an absent principal. The jurisdiction taken of foreign corporations, in the absence of statutory requirement or express consent, does not rest upon a fiction of constructive presence, like qui facit per alium facit per se. It flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there is established."

In Cannon Mfg. Co. v. Cudahy Packing Co., 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634, the suit was brought by the Cannon Mfg. Company, a North Carolina corporation, for a breach of contract charged against the defendant, a corporation organized under the laws of the state of Maine and having its principal place of business in Chicago, Ill. There was also doing business in North Carolina at that time the Cudahy Packing Company of Alabama, a corporation organized under the laws of the state of Alabama. This last corporation was the instrumentality employed by the Cudahy Packing Company of Maine to market the Cudahy products in the state of North Carolina. The Cudahy corporation of Maine owned all the stock of the Cudahy corporation of Alabama, and dominated the Alabama corporation immediately

and completely; exerting its control both commercially and financially in substantially the same way as it did those selling branches and departments of its business not separately incorporated, which were established to market the products in other states. E. A. Cudahy, Sr., was president of the Maine corporation, and also president and treasurer of the Alabama corporation. E. A. Cudahy, Jr., was vice president of the Maine corporation, and also vice president of the Alabama corporation. One Gearen was assistant treasurer of both corporations. The return process recited that service had been made by the delivery of a copy of summons and complaint to Cudahy Packing Company of Alabama, agent of the defendant, Frank H. Ross, to whom the papers were delivered, being process officer of the Cudahy Packing Company of Alabama. In the District Court the defendant appeared, specially moved that the summons be set aside, and the action dismissed for lack of jurisdiction. The ground of the motion was that the defendant was not doing business within the state, and had not been served with process. The District Court quashed the summons and dismissed the action. The Supreme Court stated the objection to the claim of jurisdiction to be that the defendant was not doing business within the state in such a manner and to such an extent as to warrant the inference that it was present there—citing Bank of America v. Whitney Central National Bank, supra. The Supreme Court held that the objection to the maintenance of the suit was not procedural, as where it was sought to defeat a suit against a foreign corporation on the ground that process had not been served upon one not authorized to act as agent—citing cases. The court concluded:

"We cannot say that, for purposes of jurisdiction, the business of the Alabama corporation in North Carolina became the business of the defendant."

The judgment of the District Court dismissing the case was accordingly affirmed.

[5] In the present case the plaintiff, in its original petition or complaint, does not allege that the defendant was engaged in doing business in Shanghai, China, or that defendant was engaged in doing business in China in such manner or to such an extent as to warrant the inference that it was present there. The contrary distinctly appears. The allegation is that "the defendant is a New York corporation, with its main office in New York," and that the agreement entered into between the plaintiff and defendant was by correspondence, which the plaintiff "craves leave to produce at the trial of the cause."

It is also alleged that the New York office of the defendant had cabled the plaintiff, informing it that the purchases of the merchandise mentioned in the petition would be rejected, and that the goods already shipped would be sold in New York for plaintiff's account. The allegation that the defendant had a branch office in Shanghai, of which W. P. Hough was the manager, and that its main office was in New York, does not qualify the other allegations so as to bring the defendant corporation into Shanghai and fix its presence there, nor does the succeeding allegation in the petition that the defendant, through the manager of its Shanghai branch, purchased of the plaintiff for or on account of its (the defendant's) New York office, the merchandise mentioned in the petition, bring the corporation into Shanghai and fix its presence there. The fact is that the petition distinctly negatives the presence of the defendant corporation in Shanghai and any inference that such was the fact.

[6] The bank exchange credit mentioned in the petition, and referred to in the cable correspondence between defendant in Shanghai and the plaintiff in New York, was to be consummated in New York, and not in Shanghai. This feature of the case alone is sufficient to establish the fact that defendant was not doing business in China, and was not present in China, either by its own act or by the act of its agent, W. P. Hough.

Applying the decisions of the Supreme Court to the facts stated in the petition, we conclude that it did not appear from the original petition that defendant was doing business in Shanghai, China, at the time mentioned, in "such manner and to such an extent as to warrant the inference that defendant was present there."

The plea to the jurisdiction should have been sustained, and the petition dismissed. The subsequent proceedings did not fix the defendant's presence in China any more effectively or legally than the original petition.

In so far as objections were made to the evidence relating to facts involved in the question of jurisdiction and were sustained by the court, the orders of the court are reversed with respect to such matters as are referred to in this opinion. The evidence as to such matters was, in our opinion, relative and material, and therefore admissible.

[7] The service of summons upon W. P. Hough did not bring the defendant within the jurisdiction of the court, for the reason

that it appears from the evidence that Hough was not an authorized agent of the defendant, upon whom a service of summons, binding upon the defendant, could be made. It appeared from the evidence that Hough was a mere solicitor of business for the defendant. He had no power to close contracts or consummate business in its essential and binding elements. In matters of contractual obligation, he communicated with his principal in New York by cable, and his authority was limited by the directions he received from his principal. In no jurisdictional sense was his authority such that it could be said that he brought his principal into the district of China and was there doing business as the principal.

We conclude that the United States Court in China had no jurisdiction of the defendant in this case, and that the judgment must be reversed, with directions to dismiss the action.

This conclusion obviates any necessity of discussing the case on its merits.

Remanded, with direction to the court below to dismiss the action.