[No. 20239.   Department Two.   April 22, 1927.]

AUGUST KRAUSE, *Appellant*, v. HANOVER NATIONAL BANK, *Respondent*.[1]

[1] CORPORATIONS (261)—FOREIGN CORPORATIONS—ACTIONS AGAINST —JURISDICTION—DOING BUSINESS IN STATE. A New York bank is not doing business in this state, or subject to suit here, from the fact that its correspondent banks in this state issued its travelers checks, in the usual form, reciting that they were to be considered as drafts upon, and payable by it.

Appeal from a judgment of the superior court for Spokane county, Truax, J., entered July 10, 1926, dismissing an action against a foreign corporation for want of proper service of process. Affirmed.

[1]Reported in 255 Pac. 934.

*Lovell & Ott,* for appellant.

*W. O. Miller,* for respondent.

ASKREN, J.—August Krause, desiring to travel in foreign countries, applied to the Ritzville State Bank for $650 worth of travelers checks. The bank issued him this amount in different denominations. The checks read as follows:

"TRAVELERS CHECK

10                                                              10

When countersigned below
with this signature        May 24, 1914        No. A209
Rudolph Machol

THE HANOVER NATIONAL BANK<br>Of the City of New York

Through its correspondents as per accompanying list
Will pay to the order of Leo Bergman............$10
............Ten Dollars or its equivalent
Rudolph Machol
This check will be paid
when presented properly        Ritzville State Bank
endorsed to The Hanover        Ritzville, Washington
National Bank of the        A. H. Martin, Prs.
City of New York
Wm. H. Suydam, Vice-President."

On the back of each check was endorsed the following:

"Whenever presented this check is to be considered as a draft on The Hanover National Bank of the city of New York. In countries where revenue stamps are required the amount of same is to be paid by the holder."

The checks were afterwards löst or stolen and notification was given to the Hanover National Bank. The bank paid the checks upon presentation to a person whom plaintiff alleged was not the rightful owner, and suit was brought to recover their value.

The action was commenced in Adams county and service on the Hanover National Bank was sought to be made by delivery to the Ritzville State Bank as agent of the defendant.

The trial court sustained a motion to quash, upon the ground that service was not made on any agent of the defendant corporation and that the defendant was not doing business in the state. The plaintiff appeals.

[1] We shall notice the single question of whether the respondent is doing business in the state. Much argument in the briefs has been devoted to the question of whether these so-called travelers checks are drafts or certificates of deposit. We think it clear that no matter what their exact status may be, so far as the Hanover National Bank is concerned, that corporation was not doing business in the state simply by reason of the fact that these instruments were drawn on it or sold or issued by the Ritzville State Bank.

The question of jurisdiction is similar to the one raised in *Bank of America v. Whitney Central National Bank*, 261 U. S. 171, where the plaintiff bank sought to sue the defendant in New York, although its banking house and place of business were in New Orleans. Service was made by delivering a copy of the summons and complaint to the president of the defendant bank while temporarily in New York. The court held that, at the time of the service, the defendant bank was not doing business in New York in such a manner as to justify the inference that it was present there. The facts relied upon to show that business was transacted are set out in the opinion, and we quote therefrom:

"The facts relied upon to establish presence of the defendant within the district consist wholly of its relations to the Hanover National Bank and five other banks, whose places of business are located in New York, and of transactions conducted through them.

Each of these six banks is, what is commonly called, a correspondent of the defendant. In each, the Whitney Central carries continuously an active, regular deposit account. But its transactions with these banks are not limited to making deposits and drawing against them. Superimposed upon the simple relation of bank and depositor are numerous other transactions which necessarily involve also the relationship of principal and agent. These additional transactions conducted by the correspondent banks include: Payment in New York of drafts drawn, with accompanying documents, against letters of credit issued by defendant at New Orleans; the receipt in New York from brokers and others of securities in which the Whitney Central or its depositors are interested, and the delivery of such securities; the making of payment to persons in New York for such securities; the holding of such securities on deposit in New York for long periods and arranging substitution of securities; the cashing, under specific instructions from defendant given in New Orleans, of checks drawn on it by third parties with whom it had no banking or deposit relations; the receipt in New York from third parties, with whom defendant apparently had no banking relations, of deposits of moneys for account of its customers.

"The Whitney Central had what would popularly be called a large New York business. The transactions were varied, important and extensive. But it had no place of business in New York. None of its officers or employees was resident there. Nor was this New York business attended to by any one of its officers or employees resident elsewhere. Its regular New York business was transacted for it by its correspondents—the six independent New York Banks. They, not the Whitney Central, were doing its business in New York. In this respect their relationship is comparable to that of a factor acting for an absent principal. The jurisdiction taken of foreign corporations, in the absence of statutory requirement or express consent, does not rest upon a fiction of constructive presence, like *qui facit per alium facit per se*. It flows from the fact that the corporation itself does business in the State or dis-

trict in such a manner and to such an extent that its actual presence there is established. That the defendant was not in New York and, hence, was not found within the district is clear."

We think the same result must be applied to the facts of this case. It is well known that practically every bank in the United States issues travelers checks on one or more of the different national banking institutions. That each issuance of these checks constitutes the doing of business in this state by these national banks and that therefore each and every one of them is suable in every county of the state where such checks are issued is inconceivable to us, no matter what the obligation created by the checks may be said to be.

The judgment is affirmed.

MACKINTOSH, C. J., PARKER, and TOLMAN, JJ., concur.