GREAT LAKES PRESS CORPORATION, Plaintiff, *v.* AIR MALTA LTD., Defendant.

Supreme Court, Special Term, Monroe County, April 14, 1952.

*George Foster, Jr.,* for defendant appearing specially.

*David Schoenberg* and *Frank G. Wittenberg* for plaintiff.

ROBERTS, J.  Defendant has appeared specially and moved to vacate and set aside service of the summons in the above action upon the grounds that the defendant was not doing business in the State of New York and that the person served was not a managing agent of said defendant.

Plaintiff is a domestic corporation which has brought this action to recover for printing certain posters and folders claimed to have been ordered by the defendant and furnished to it.  The defendant is a foreign corporation organized and existing under the laws of the Colony of Malta, a self-governing colony of the British Empire, and having a principal place of business at Valleta, Malta.  It is engaged in air transportation principally in the area of the Mediterranean Sea and having authority to operate chartered flights in and out of Bermuda.

The defendant has never conducted any of its flights to any part of the United States and had no authority to do so.  It has never obtained permission to do business in the State of New York nor designated a person upon whom process might be served.  The directors of the corporation all reside in London, England, and no directors' meetings have ever been held in this country.  It neither owns nor leases any property within the State of New York.  It has no air terminal or passenger facilities in this State, nor has it ever maintained any bank account here.

Aviation Control Corporation is a domestic corporation having a principal place of business at 40 Wall Street in New York City.  This corporation is entirely separate and distinct from the defendant and is not identified with it through any common ownership of stock, common officer, common director, or otherwise.

Aviation Control Corporation and the defendant became mutually interested in some arrangement by which the defendant's facilities could be utilized for the transportation of passengers between Bermuda and Rome in connection with the Holy Year celebration and pilgrimage of 1950.  Accordingly on April 29, 1950, defendant entered into an aircraft charter agreement with Aviation Control Corporation, by which it chartered to the latter corporation a certain Douglas aircraft with crew, fully outfitted for carrying fifty-two passengers, for certain scheduled flights from Bermuda to Rome and from Rome

to Bermuda, between the 11th day of June, 1950, and the 16th day of September, 1950, with two additional flights between Bermuda and the United Kingdom, one on June 11th and the second within seven days after September 16th. Aviation Control Corporation agreed to pay the defendant before the departure of each flight, compensation for such flight at the rate of $1.32 per statute mile. Attached to the charter agreement were certain conditions, among which was the following: " This Agreement is entered into by the Charterer (Aviation Control Corporation) on his own behalf and as agent for all persons and the owners of all goods carried in the aircraft." The conditions further provided that the agreement was to be construed according to the laws of England and any action arising thereunder should be brought only in a court of the United Kingdom.

While the negotiations for the charter agreement were in progress but before such agreement had actually been signed, it was suggested that Aviation Control Corporation should be permitted to use defendant's name in advertising or other solicitation of business in connection with the proposed charter agreement, and accordingly and on April 7, 1950, a separate agreement was entered into between the defendant and Aviation Control Corporation, by which the defendant designated and appointed Aviation Control Corporation as its agent and representative for the following purposes: (a) To open an office for the defendant in the city of New York and maintain and operate the same; (b) To supervise and arrange for the sale of tickets on all of the defendant's scheduled routes; (c) To receive payment for the sale of tickets and deposit the same in the account of Aviation Control Corporation; (d) To execute all agreements relating to the sale of tickets and to enter into charter agreements for aircraft operated for or in behalf of the defendant. This agency agreement was subsequently terminated by the defendant on July 10, 1950. Attached to the moving papers are certain letterheads bearing the name of the defendant and specifying New York offices at 222 East 46th Street and 40 Wall Street, with telephone numbers and a cable address. Also attached to the motion papers is a newspaper advertisement bearing the defendant's name under which is given the address of 222 East 46th Street and a New York telephone number. This advertises round trip flights between Bermuda and Rome, followed by the notation " Consult your local Travel Bureau or any Pan American Ticket Office ".

Even assuming that Aviation Control Corporation acted to the full extent of the authority conferred upon it by the agency agreement and in fact opened, maintained and operated an office in the name of the defendant and there supervised and arranged for the sale of tickets and received payment therefor, and in connection therewith had the defendant's name listed in telephone directories, used stationery bearing the name of the defendant, advertised flights of defendant's planes in the papers, and procured and used a cable address for the defendant, there is still a serious question as to whether under all of the facts disclosed, such activities would constitute the doing of business within this State so as to make the defendant subject to the jurisdiction of our courts.

There is no precise test which can be applied. Each case must be decided on its own facts. The nature of the business must be such that it can be said that the corporation is actually here, and it must be here not occasionally or casually but with a fair measure of permanence and continuity. (*Sterling Novelty Corp.* v. *Frank & Hirsch Distr. Co.*, 299 N. Y. 208, 210; *Tauza* v. *Susquehanna Coal Co.*, 220 N. Y. 259, 267.) A substantial part of its main business must be transacted within the State. (*Yeckes-Eichenbaum, Inc.*, v. *McCarthy*, 290 N. Y. 437, 444; *Holzer* v. *Dodge Bros.*, 233 N. Y. 216, 221.) Where an independent domestic corporation acts as distributor for a foreign corporation, the fact that it uses the name of the foreign corporation on its office door and building directory, that it uses a letterhead containing the name of the foreign corporation, and that such corporation is listed in the telephone directory, is insufficient to show that the foreign corporation is doing business in this State. (*Hastings* v. *Piper Aircraft Corp.*, 274 App. Div. 435.) The sale of tickets for the chartered flights of defendant's aircraft is not like the activities of salesmen of a foreign corporation in soliciting orders which results in a continuous flow of shipments of goods into the State as was the case in *Tauza* v. *Susquehanna Coal Co.* (220 N. Y. 259, *supra*), and in *Internat. Shoe Co.* v. *Washington* (326 U. S. 310); nor is the situation similar to that where the agents of a foreign corporation are engaged in a continuous and systematic course of purchasing merchandise in this State as in *Sterling Novelty Corp.* v. *Frank & Hirsch Distr. Co.* (299 N. Y. 208, *supra*). The business claimed to have been conducted here is no different from that of a railroad having no trackage or terminal in the State but which maintains an office here merely for the solicitation of business and the sale of tickets.

In such situations, it has been held that the corporation is not doing business within the State so as to render it amenable to process. (*Cohen* v. *Gulf, Mobile & Ohio R. R. Co.*, 95 N. Y. S. 2d, 633; *Green* v. *Chicago, Burlington & Quincy Ry.*, 205 U. S. 530; *Phila. & Reading Ry. Co.* v. *McKibbin*, 243 U. S. 264; *Kelley* v. *Delaware, L. & W. R. Co.*, 170 F. 2d 195, certiorari denied 336 U. S. 939.)

In *Dineen* v. *United Airlines Transp. Corp.* (166 Misc. 422), the court held that a foreign corporation operating an airline entirely outside of the State but which maintained an office in New York City where its employees were engaged in soliciting business and selling tickets, was not engaged in business in this State. However, in another suit brought against the same airline, it was subsequently held that it was doing business in this State. (*Jensen* v. *United Air Lines Transp. Corp.*, 255 App. Div. 611, affd. 281 N. Y. 598.) In the latter case, additional facts were shown, viz., that the defendant had an alternate airport for landing its planes at Floyd Bennett Field on Long Island when it was inadvisable for them to land at the Newark airport; that its time tables and advertising gave New York City as the eastern terminus of its air line; that at its New York office it not only made reservations and sold tickets but took care of refunds and there maintained a passenger station with a fully equipped waiting room where its employees examined tickets of departing passengers, checked baggage, and arranged for the transportation of its passengers in limousines to the Newark airport; that the drivers of such cars wore uniforms bearing the name of the air line and the cars themselves bore the name and insignia of the air line; that it also maintained a bank account in New York State. The court held that the defendant in that case did far more than merely solicit business in New York City.

The defendant here carried on none of the activities enumerated above. It merely authorized Aviation Control Corporation to act as its agent, maintain an office, and use its name for the sale of tickets. It did not undertake to pay Aviation Control Corporation for these services or to defray any of the expenses incurred in connection therewith, nor did it reserve any right of supervision or control over Aviation Control Corporation or any of its employees. Moreover, this was not a continuing business as the agency agreement remained in effect for only three months and was cancelled one month after the flights specified in the charter agreement were to begin. On

the facts disclosed and under the authorities cited the defendant was not doing business in the State of New York.

The plaintiff has likewise failed to show that Eric Rath, the person upon whom service was made, was a managing agent of the defendant. On March 7, 1950, the printed matter, which is the basis of this lawsuit, was ordered by a letter signed " Air Malta Eric Rath U. S. Representative ". On March 10, 1950, the defendant wrote to Mr. Rath as follows: " Dear Sir: Further to our various conversations when you were in Europe last, we hereby confirm your appointment as United States representative of this Company." Mr. Rath was named as United States representative of the defendant in order to facilitate arrangements he was endeavoring to make to promote air travel to Rome in connection with the Holy Year celebration and pilgrimage, using defendant's air facilities. He had no authority to enter into any contracts or bind the defendant in any way. There is no showing that he was invested with general powers involving the exercise of judgment and discretion which is necessary to constitute him a managing agent. (*Taylor* v. *Granite State Provident Assn.*, 136 N. Y. 343.) The mere fact that he was designated as a representative of the defendant did not make him a managing agent unless his duties and responsibilities made him such. (*Coler* v. *Pittsburgh Bridge Co.*, 146 N. Y. 281.) Regardless of what the duties of Mr. Rath may have been as United States representative of the defendant, his authority to act as such representative was terminated by a letter sent him on May 8, 1950. The summons and complaint in this action were served upon Mr. Rath the week of July 17, 1950, more than two months after such termination of his authority. The plaintiff has failed to show that at the time service was made Mr. Rath had any connection whatsoever with the defendant. The service was therefore improperly made and should be set aside.

Motion granted.